# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DAVID N. TERHUNE             :
          Plaintiff             :          Civil Action
                 :
    v.             :
                 :
APPLIED EXTRUSION             :          No. 06-360-KAJ
       TECHNOLOGIES, INC.             :
                 :
    and             :
                 :
JACKSON CRAIG             :
                 :
    and             :
                 :
TERRY SMITH             :

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PALINTIFF'S COMPLAINT

James Green, Esquire (DE Bar No. 481)
Seitz, VanOgtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
Wilmington, DE 19899

And

Alan B. Epstein, Esquire
[Admitted *Pro Hace Vice*]
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, Seventh Floor
Philadelphia, PA 19103


Attorneys for Plaintiff
David N. Terhune

Dated: August 3, 2006

## <u>TABLE OF CONTENTS</u>

I.    STATEMENT OF THE NATURE AND STAGE
      OF THE PROCEEDING ..................................................    2

II.   SUMMARY OF THE ARGUMENT............................    4

III.  STATEMENT OF RELEVANT FACTS........................    4

IV.   ARGUMENT...........................................................    8

      A.    Legal Standard Controlling Rule 12(b)(6)
            Motions to Dismiss........................................    8

      B.    Plaintiff Was Covered Under the Terms
            of an ERISA Plan Arising from the Provisions
            of His Employment Agreement of March 8, 2005
            and the Motion to Dismiss Count I of His
            Complaint For Failure to State Upon Which
            Relief Can be Granted Must Be Denied....................    11

            1.    The Motion to Dismiss Should be
                  Denied Because The Severance
                  Agreement and Equity Based
                  Incentive Plan As Set Forth In The
                  Employment Agreement Are Clearly
                  Employee Welfare Benefit Plans
                  Pursuant to ERISA........................................    11

            2.    The Motion to Dismiss Should Be Denied
                  to Counts II-V of the Complaint that Set
                  Forth Claims Under Delaware
                  Statutory and Common Law...........................    22

      IV.   CONCLUSION.................................................................    24

i

## TABLE OF AUTHORITIES

### CASES

Agelastro v. Prudential-Bache Sec., Inc.
764 F.2d 939, 944 (3d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Alston v. Atlantic Electric Co., 962 F.Supp. 616 (D.N.. 1997). . . . . . . . . . . .  13

American Medical Intern v. Valliant, 74 F.3d 1245 (9th Cir. 1996). . . . . . . . .  18

Angst v. Mack Trucks, Inc., 969 F.2d 1530 (3d Cir. 1992). . . . . . . . . . . . . .  13, 14

Balock v. Mars Electronics Intern., Inc. 1990 WL511 (E.D. Pa. 1990). . . . . . .  16

Belanger v. Wojman-Garden Co., 71 F.3d 451, 455 (155 Cir. 1995). . . . . . .  15

Blair v. Young Phillips Corp., 158 F. Supp. 2d 654 (M.D. N.C. 2001). . . . . . .  17

Blau v. Del Monte Corp., 748 F.2d 1348 1352 (9th Cir. 1984),
cert. denied, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985). . . . . . . . .  12

Bogue v. Ampex Corp., 976 F.2d 1319 (9th Cir. 1992). . . . . . . . . . . . . . . . .  12,15

Brown v. Philip Morris Inc., 250 F.3d 789, 796 (3d Cir. 2003). . . . . . . . . . . .  8

Colburn v. Upper Darby Township
838 F.2d 663, 665 (3d Cir. 1988) cert. denied, 489 U.S. 1065 (1989) . . . . . . .  8

Cassidy v. Akzo Nobel Salt, Inc., 29 EBC 1097 (6th Cir. 2002). . . . . . . . . . . .  17

Chester County Intermediate Unit v. Pennsylvania Blue Shield,
896 F.2d 808, 812 (3d Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Colarusso v. Transcapital Fiscal Systems, Inc.,
227 F.Supp.2d 243, 253 (D.N.J. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Conley v. Gibson, 355 U.S. 41, 45-46 (1957). . . . . . . . . . . . . . . . . . . . . . . .  8

Crown American Realty Trust Securities Litigation (Johnson v. Pasquerilla),
1999 U.S. Dist. LEXIS 11162, (W.D. Pa., July 20, 1999). . . . . . . . . . . . . . . . .9, 10

Darlin v. Consolidated Rail Corporation,
93 F.Supp.2d 599, 601 (E.D. Pa. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . .15, 16

Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982). . . . . . . . . . . . . . 16

Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). . . . . . . . . . . . 9

Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). . . . . . . . . . . . . . . . . . . . . . . 8

Jairett v. First Montauk Securities Corp., 153 F. Supp.2d 562,
566 (E.D. Pa. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Jackson v. Birmingham Board of Education, 544 U.S. 167 (2005). . . . . . . . . . . . 8

James v. Fleet/Norstar Financial Group, Inc., 992 F.2d 463 (2d Cir. 1993). . . . . . 14

Jordan v. Fox, Rothschild, O'Brien & Rankel,
20 F.3d 1250, 1261 (3d Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Kacman v. Safeguard Business Systems, 189 WL 71492 (E.D. Pa. 1989). . . . . . 16

Linerboard Antitrust Litigation, 2000 U.S. Dist. LEXIS 14433
(E.D. Pa., Oct. 5, 2000), at *26-27. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

National Rural Electric Cooperative Association v. Breen Capital Services Corp.
2001 WL 294086 (D.N. J., March 28, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Pane v. RCA, Corp., 868 F.2d 631 (3d Cir. 1989). . . . . . . . . . . . . . . . . . 12, 15, 16, 19, 21

Perry v. Vanteon Corp., 192 F.Supp.2d 93, 97 (W.D.N.Y. 2002). . . . . . . . . . . . . 8

Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988). . . . . . . . . . . . . . . . . . . . 8

Scott v. Gulf Oil Corp., 754 F.2d 1499 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . 12

Reddy v. NAC Re Corp., 2000 WL 1336477 (D.Conn. 2000). . . . . . . . . . . . . . . . 16

Rockefeller Center Properties, Inc. Securities Litigation,
184 F.3d 280, 286-87 (3d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rocks v. City of Philadelphia
868 F.2d 644, 645 (3d Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Schonholz v. Long Island Jewish Med. Ctr., 87 F.3d72, 75 (2d Cir. 1996). . . . . 12, 14, 19, 20

Summit Health, Ltd., 500 U.S. 322 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Swierkiewicz v. Sorema</u> *N.A.,* 534 U.S. 506, 513 (2002). . . . . . . . . . . . . . . . . . . .8

<u>Welsh v. Maintrans, Inc.</u>, 2001 WL 73112 (E.D. Pa. 2001). . . . . . . . . . . . . . . . . .18

<u>Williams v. New Castle County</u>, 970 F.2d 1260, 1265-66 (3d Cir. 1992). . . . . . . . 8

<u>Williams v. Wright</u>, 927 F.2d 1540 (11th Cir.1991). . . . . . . . . . . . . . . . . . . . . . . .16

## **STATUTES**

Fed. R. Civ. P. 12(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 10

Fed. R. Civ. P. 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed. R. Civ. P.12 (b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Plaintiff, David N. Terhune ("Terhune") by his counsel, James Green, Esquire and Alan B. Epstein, Esquire, hereby submits this memorandum of law in opposition to the Defendants' Motion to Dismiss Counts I, II, III, IV, V and VI of Plaintiff's Complaint and respectfully requests the Court to either: 1) deny the motion to dismiss Plaintiff's well stated claims brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001 et seq. (Count I-Against Defendant Applied Extrusion Technologies, Inc.) and the claims for state law based libel (Count VI-Against all Defendants) and dismiss the remaining Employment Agreement based claims (Counts II through V) as necessary pursuant to the preclusion provisions of ERISA; or, in the alternative, 2) upon dismissal of the ERISA claim, dismiss the remaining state law based causes of action without prejudice so as to permit Plaintiff to re-file his claims in the appropriate Delaware state court.   In support of that request, Plaintiff states as follows:

## I.   STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

On May 30, 2006, Plaintiff, David Terhune, filed the Complaint that is the target of the present motion.  A copy of that Complaint and its attachments is attached hereto as Exhibit "1."

The Complaint sets forth David Terhune's requests for declaratory, injunctive and monetary relief based upon averments that his former employer, Applied Extrusion Technologies, Inc. and two individuals associated with that corporate entity violated his rights protected under federal and state law.  More specifically, the Complaint alternatively alleges violations of the provisions of Section 1132(1)(B) of the Employment Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §1132(a)(1)(B)

(Count I) and Delaware law based claims relating to his employment agreement with AET, citing the breach of his employment contract (Count II), breach of the implied covenant of good faith and fair dealing (Count III), the Delaware Wage Payment and Collection Law ("WPCL"), 19 Del. C. § 1101, *et seq.*(Count IV) and Fraud in the Inducement (Count V).[1]  The Complaint also asserts claims of libel and slander against the company and the individual defendants.

The Defendants collectively have now presented a motion to dismiss the Complaint in its entirety, employing documents extraneous to the Complaint to assert that Plaintiff has failed to state a claim under the provisions of ERIISA upon which relief can be granted because: 1) the terms of his employment agreement did not establish a recognized ERISA plan; and 2) he has "failed to allege entitlement to any severance benefits under the agreement."  Defendants also proffer that because Plaintiff's ERISA claim, that is the sole basis for federal jurisdiction, must be dismissed, this Court lacks subject matter jurisdiction over the remaining state law based claims set forth in his Complaint.[2]

---

[1] Section 514(a), the ERISA preemption provision, provides, in pertinent part, that "the provisions of [ERISA] shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).  Accordingly, Plaintiff's claims set forth in Counts I-V are cognizable either under the applicable provisions of ERISA or under Delaware statutory and common law, but not both.

[2] The motion also addresses the substantive merits of Counts II (breach of Contract) and IV (WPCL).  However, if the Defendant's assertion that this court lacks jurisdiction because Plaintiff's claims are not cognizable under ERISA is correct, the Court should dismiss the remaining state law based claims without prejudice to permit Plaintiff to reinstitute those claims in the Delaware state court of appropriate jurisdiction.  On the other hand, if Plaintiff's ERISA claim is sustained at this stage of the proceeding , then the Court should dismiss the remaining claims relating to his rights under the controlling employment agreement set forth in Count II-V and permit the claims incorporated in Counts I (ERISA) and VI (libel and slander) to proceed.

## II.    **SUMMARY OF THE ARGUMENT**

Plaintiff's Complaint sets forth well-pled averments of violations of ERISA arising out of his Employment Agreement with Defendant AET executed March 8, 2005. The complex severance provisions of that Employment Agreement require extensive ongoing administration and therefore, constitute a welfare plan under the provisions of ERISA. Accordingly, this Court has jurisdiction to hear Plaintiff's claims.

Based upon the required denial of Defendants' motion to dismiss Plaintiff's ERISA claims and ERISA's mandated preclusion provisions, this Court should dismiss the alternately pled state law based claims set forth in Plaintiff's Complaint in Counts II through V and permit Plaintiff to proceed in this Court with his claims against the Defendants contained in Counts I and VI.

Alternatively, if the ERISA claims are dismissed, the Court should dismiss the remainder of Plaintiff's claims without prejudice, thereby permitting Plsaintiff to pursue those claims in the appropriate Delaware state court.

## III.    **STATEMENT OF RELEVANT FACTS[3]**

Plaintiff, David N. Terhune, who resides in Montchanin, Delaware had been, prior to his termination, employed in the capacities of Chief Financial Officer ("CFO")(1994-95), Chief Operating Officer ("COO")(1996-2001), President and COO(2002-2004) and President and CEO(2005-2006) of Applied Extrusion Technologies, Inc. ("AET"), a Delaware manufacturer and supplier of oriented polypropylene films ("OPP"). Plaintiff's

---

[3] Pursuant to the mandates of Rule 12(b) of the Federal Rules of Civil procedure, all facts recited herein are taken from the well-pled facts in Plaintiffs Complaint and the attachments thereto.

Complaint ("Complaint"), ¶¶ 5-7. Formed in 1986, AET is North America's leading developer and independent global supplier dedicated solely to the manufacturing of OPP films, with annual sales exceeding $300 million dollars. The Company maintains production facilities in Covington, Virginia, Terre Haute, Indiana and Varennes, Canada. Complaint, ¶ 8. The Company's products are used by suppliers of a varied array of consumer products including labels for bottles and cans, packaging for confectionary and snack foods, pet foods, condiments, holographic films for gift wrap and promotional packages, and specially designed barrier films used to extend the shelf-life of snack foods, cheeses, meats and fresh produce. The Company's products serve end-users such as Coca-Cola®, Pepsi-Cola®, Frito-Lay®, Hershey® and Nabisco®. Complaint, ¶ 9.

On March 8, 2005, Plaintiff and Defendant AET entered into an Employment Agreement (the "Agreement") for good and valuable consideration, the terms of which assured Plaintiff that he would be employed as the Company's Chief Executive Officer and President through December 31, 2006. Complaint, ¶ 14. A copy of the Agreement was attached to the Complaint as Exhibit "A" and is attached hereto as part of Exhibit "1."

The Agreement provided for the following annual compensation and benefits: a) a base salary of Four Hundred Thousand Dollars ($430,000); b) an incentive bonus targeted at fifty percent (50%) of David Terhune's base salary, with a maximum payout of one hundred percent (100%) of his base salary; c) mandatory participation in the Company's equity-based incentive plan for senior management; d) participation in the Company's deferred compensation retirement plan ("EDCRP"); e) participation in the

Company's pension and saving's plans; f) health insurance; g) long-term disability insurance providing not less than sixty-five percent (65%) of Plaintiff's base salary; h) life insurance providing death benefits of not less than $1,875,000; i) provision of an automobile and automobile allowance; payment of membership expenses (including fees and dues) at clubs chosen by the Plaintiff with the consent of the Company (not to be unreasonably withheld); and k) payment for a yearly physical medical examination. Complaint, ¶ 15.

The Agreement also provided in pertinent part in Section 4(e) that AET could terminate Plaintiff at any time "with" or "without cause"[4] during the term of the Agreement. If Terhune were terminated "without cause" during the term of the agreement (or even if the Plaintiff's employment should terminate at the end of the term pursuant to notice given by AET), Plaintiff would be entitled to receive the following severance benefits: a) payment of all unpaid base salary and benefits through the date of termination; b) within 60 days after termination, payment in a lump sum equal to the total of 18 months base pay and average bonus he would have received if still employed for that period;[5] c) payment of any unpaid bonus; d) continuation for 18 months from the date of termination of Plaintiff's participation in all benefit plans referred to in the following paragraphs of the Employment Agreement: Sections 3(d)(i)-disability insurance, health insurance, pension, retirement plans and accident plans; 3(d)(ii)-

---

[4] The specified basis upon which the company could make a determination that Plaintiff was fired for "cause," a determination that would completely deprive Plaintiff of any benefits upon separation from AET, was contained in the provisions of Section 4.a.iii of the Agreement.

[5] Plaintiff's Employment Agreement that controlled the terms of his employment prior to March 8, 2005 provided for a severance period of 36 months.

EDCRP; 3(d) (iii)(B)-life insurance coverage at the level maintained while he was employed or the cash equivalent thereof; and 3(e)-continued vesting in all employee benefit plans provided for in his Employment Agreement as if the Plaintiff were employed through the 18 month severance period. Complaint, ¶ 16.

The singular eligibility action required of Plaintiff for receipt of the monetary amounts to be paid and other benefits provided over the specified 18 month severance period upon termination without cause was the execution of a general release in favor of AET in a form reasonably satisfactory to AET and Plaintiff. Complaint, ¶ 17. AET, on the other hand, was responsible for resolving whether he was terminated "without cause," as the term was defined in the controlling Agreement, making the complex calculation of and paying the lump sum monetary amount owed to Plaintiff within sixty days of his termination and continuing to provide Plaintiff's participation in the the several benefit plans specified in the Agreement at the level noted therein.

On February 7, 2006, Plaintiff's employment with AET was terminated without cause. Complaint, ¶ 18. On April 11, 2006, more than 60 days after his termination, AET first transmitted its calculation of the lump sum benefits owed under the severance provisions of the Agreement in the amount of $925,426.67, and contrary to the specific terms of the Agreement: proposed: 1) payment of its obligations in four yearly installments; 2) required the continued Board Membership of Plaintiff; 3) made the benefits owed, including the deferred compensation plan (EDCRP) payments due to Plaintiff conditional upon extraneous events and circumstances; 3) set forth a requirement of previously stated and allegedly binding restrictive covenants and required their novation; 4) required the release of entities and individuals other than

AET; and 4) required Plaintiff's continued consultation services after termination. A copy of the unsigned correspondence of AET setting forth these suggestions was attached to the Complaint as Exhibit "B" and is attached hereto as part as Exhibit "1." Finally, despite Plaintiff's complete compliance with the terms of the Employment Agreement, including the proffer of an appropriate release of AET, no payments of money or the provision of continued benefits in accordance with the terms of the controlling Employment Agreement have been made to date. Complaint, ¶ 19.

Plaintiff averred that these actions constituted a material breach of his Employment Agreement and constituted a violation of the employee benefit plan established by that Agreement. Complaint, ¶¶ 4. and 20.

## III.    ARGUMENT

### A.    Legal Standard Controlling Rule 12(b)(6) Motions to Dismiss

It is a well settled legal maxim that motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) are viewed with disfavor and are rarely granted. National Rural Electric Cooperative Association v. Breen Capital Services Corp., 2001 WL 294086 (D.N. J., March 28, 2001). In considering a motion to dismiss under Rule 12(b)(6), the court "must take all the well pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989); Colburn v. Upper Darby Township, 838 F.2d 663, 665 (3d Cir. 1988), cert. denied, 489 U.S. 1065 (1989); Agelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985). The district court must simply assume the truth of the material facts as alleged in the complaint. Jackson v. Birmingham Board of Education,

544 U.S. 167 (2005); Summit Health, Ltd., 500 U.S. 322 (1991). The court must decide whether "relief could be granted on any set of facts which could be proved." Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988). Accord, Williams v. New Castle County, 970 F.2d 1260, 1265-66 (3d Cir. 1992). A motion to dismiss may not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (following, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Williams v. New Castle County, supra. "When presented with a motion to dismiss for failure to state a claim, the court's function is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Perry v. Vanteon Corp., 192 F.Supp.2d 93, 97 (W.D.N.Y. 2002). A rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff. Brown v. Philip Morris Inc., 250 F.3d 789, 796 (3d Cir. 2003). Further, "plaintiff's complaint need only satisfy the simplified pleading standard of Rule 8(a)" [Id.; Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 (2002)] that requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Moving defendants bear the burden of showing that plaintiffs have failed to state a claim for which relief can be granted. Jairett v. First Montauk Securities Corp., 153 F. Supp.2d 562, 566 (E.D. Pa. 2001).

When deciding a motion to dismiss pursuant to Fed. R. Civ. P.12 (b)(6), the Court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Rankel, 20 F.3d 1250, 1261 (3d Cir. 1994). The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is strictly limited to a test of the

9

sufficiency of the plaintiff's complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). The law is well settled that extrinsic evidence is not to be considered on such motions. In fact, there are only three narrow exceptions to this rule: (1) where the extrinsic document is incorporated by reference into the complaint, such as by citation, quotation or paraphrasing; (2) where the document is a matter of public record, such as an SEC (or court) filing; and (3) where the document is indisputably authentic *and* plaintiff's claims are based on the document. In re: Crown American Realty Trust Securities Litigation (Johnson v. Pasquerilla), 1999 WL 529581, (W.D. Pa., July 20, 1999), at *16-17; In re: Linerboard Antitrust Litigation, 2000 WL 1475559 (E.D. Pa., Oct. 4, 2000), (*citing* In re Rockefeller Center Properties, Inc. Securities Litigation, 184 F.3d 280, 286-87 (3d Cir. 1999)); Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).

In Linerboard, supra, defendants moved to dismiss certain claims as being contradicted by certain statements previously made by plaintiffs in separate discovery disputes, characterizing those disputes as "admissions". This Court refused to even consider these prior statements and denied the motion, on the ground that they were not a part of the complaint, they did not form a basis for any claims, and plaintiff did not agree that they constituted "admissions" at all. 1999 WL 529581 (W.D. Pa. July 21, 1999). Similarly, the court in Crown American Realty, supra, refused to consider refinancing agreements attached to defendants' motion to dismiss, which defendants asserted negated plaintiff's allegations of *scienter*, even thought plaintiff's securities fraud claim was based on defendants' alleged need to obtain that refinancing. Id.

Rule 12(b) additionally provides that the district court may exclude the extraneous documents from consideration or permit the motion to be considered as a motion for summary Judgment under Rule 56 after providing the parties a full opportunity to explore the facts through discovery:

> ...If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56.

Fed. R. Civ. P. 12(b)

**B.    Plaintiff Was Covered Under the Terms of an ERISA Plan Arising from the Provisions of His Employment Agreement of March 8, 2005 and the Motion to Dismiss Count I of His Complaint For Failure to State Upon Which Relief Can be Granted Must Be Denied**

Applying the above legal principles to the facts of this case, AET's Motion to Dismiss for failure to state a claim must be denied because the severance provisions in his binding Employment Agreement, including the equity based incentive plan mandated by the Agreement but never established, clearly constitute a "employee welfare benefit plans" under ERISA and therefore form the basis for the continued resolution of David Terhune's claims by this Court.

1.     **The Motion to Dismiss Should be Denied Because The Severance Agreement and Equity Based Incentive Plan As Set Forth In The Employment Agreement Are Clearly "Employee Welfare Benefit Plans" Pursuant to ERISA**

In general, severance pay is a payment made by employers to employees whose services are terminated (as in the present matter) without cause.  The reasons why employers choose to extend severance pay are varied.  Where employment is terminated, claims for severance benefits often arise.  When severance benefits are provided under an "employee benefit plan," the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C.A. §§ 1001 et seq.) has been held to govern such claims for severance benefits, and the doctrine of ERISA preemption (29 U.S.C.A. § 1144(a)) serves to preempt state-law claims for benefits and often results in the removal of a plaintiff's action based on such claims to federal court.  If the severance pay is not provided under an employee benefit plan within the meaning of ERISA, a party may be able to preserve claims for severance benefits under state-law theories.  The critical inquiry, therefore, is whether a "plan" under ERISA exists.

ERISA defines an employee welfare benefit plan, in pertinent part, as: any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer. . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries. . . (A) medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services.  29 U.S.C. § 1002(1).  Although severance benefits are not specifically

12

mentioned in § 1002(1), courts have determined that most, but not all, severance packages qualify as ERISA plans. *See, e.g.,* <u>Schonholz v. Long Island Jewish med. Ctr., 87 F.3d72, 75 (2d Cir. 1996)</u>. *See also,* <u>Bogue v. Ampex Corp.</u>, 976 F.2d 1319 (9th Cir. 1992) (severance pay considered "employee welfare benefit plan" under ERISA), *cert. denied*, 507 U.S. 1031, 113 S.Ct. 1847, 123 L.Ed.2d 471 (1993); <u>Scott v. Gulf Oil Corp.</u>, 754 F.2d 1499 (9th Cir. 1985); <u>Blau v. Del Monte Corp.</u>, 748 F.2d 1348 1352 (9th Cir. 1984), cert. denied, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985). In evaluating whether a severance benefits plan qualifies as an ERISA covered plan, a court must look to the plan as a whole, not just how a plaintiff's specific circumstances play out under that plan. *See generally,* <u>Colarusso v. Transcapital Fiscal Systems, Inc.</u>, 227 F.Supp.2d 243, 253 (D.N.J. 2002).

While it is clear that ERISA subject matter jurisdiction depends upon the need for an administrative program, the test for deciding which employer obligations and undertakings classify as such a program is not nearly as clear. In <u>Pane v. RCA, Corp.</u>, 868 F.2d 631 (3d Cir. 1989), the Third Circuit affirmed the district court's determination that various severance agreements created by RCA to retain a small group of executives during a merger with General Electric Company constituted an ERISA plan. The determining factor was that under each agreement, the employee was entitled to benefits only if he or she was terminated for reasons other than cause. Therefore, "the circumstances of each employee's termination [had to] be analyzed in light of [certain] criteria, and an ongoing administrative system constituting an ERISA plan exist[ed]." <u>Id.</u> at 171.

In Alston v. Atlantic Electric Co., 962 F.Supp. 616 (D.N.. 1997), the district court held that where a severance plan provided for six months of continued health benefits and for outplacement training, and thus required an ongoing management scheme for their administration, the severance plan constituted an ERISA plan. Id. at 623. However, the court stated in *dictum* that where a plan involves "a one-time severance payment that required only simple arithmetic calculations and that would fall short of requiring an ongoing administrative scheme for its implementation," it would not qualify as an ERISA plan. Id. at 623.

In contrast, the Third Circuit, in its holding in Angst v. Mack Trucks, Inc., 969 F.2d 1530 (3d Cir. 1992), upon which Defendant largely relies, determined that ERISA did not preempt the plaintiff's claims for breach of a buyout plan where the employer agreed, after negotiation with the employees' union, to provide departing employees with a lump-sum cash payment and a year of continued benefits.  The court determined that this was a single-circumstance plan addressing a single event, and that no discretionary analysis was required with the plan at issue and the simple disbursement of a set amount of money to each employee applicant would require no ongoing administrative scheme.  Id. at 1538.  Moreover, the court held that ERISA does not apply to single payment buyout plans.  Angst is distinguishable from the present plan established by Plaintiff's Employment Agreement that required post-termination discussions to be made by the employer and a continued administration of provided benefits for an extended period (18 months) after termination.

In revealing contrast to Angst, in James v. Fleet/Norstar Financial Group, Inc., 992 F.2d 463 (2d Cir. 1993), the Second Circuit held that the employer's oral

undertaking to give employees sixty days of pay following the last day of work if

employees would remain on the job until internal consolidation was completed did not

create an employee welfare benefit plan within the meaning of ERISA. Despite the fact

that Fleet's employees had different termination dates, different eligibility, and that

payments had to be calculated individually, the court found that such measures did not

require the establishment of an ongoing administrative scheme. Id. at 467. The court

held instead that the simple arithmetical calculations and clerical determinations that

Fleet was required to make on this one occasion to ascertain each employee's

severance pay was a far cry from the ongoing and discretionary administrative analysis

required of plans governed by ERISA. Id. at 468. Moreover, "the employee's option to

receive the money in bi-weekly installments instead of in a lump sum did not change the

basic situation." Id. at 466.

 Also, in Schonholz v. Long Island Jewish Medical Center, 87 F.3d 72 (2d Cir.

1996), the severance plan at issue provided for payments to senior-level employees

upon their involuntary discharge. Such payments were based upon both the length of

time the employee held his position and his prospects for reemployment, but would only

be made if the employee displayed a reasonable and good faith effort to obtain a

position commensurate with his former level of responsibility. Id. at 74. In holding that

the plan at issue did indeed implicate ERISA, the Second Circuit focused on the fact

that the plan required much more than simple arithmetical calculations, requiring instead

evaluation of a number of subjective factors: "The Severance Plan necessitated both

managerial discretion and a separate analysis of each employee in light of certain

criteria." Id. at 76. In addition, the court determined that the plan's "effective period was

15

unlimited and would have reasonably been perceived by an employee as an ongoing

commitment."

> In light of this case law, and analyzing the evidence of
> record from the viewpoint of a reasonable person, this Court
> finds that Ohio Casualty's Severance Pay Plan is an
> employee welfare benefit plan covered by ERISA.

Id. at 76-77

In Bogue, the 9th Circuit concluded that a special compensation program for 10

key executives was an employee benefit plan under ERISA because the plan involved

more than "[t]he theoretical possibility of a one-time obligation in the future."  976 F.2d

at 1322 (quoting Fort Halifax, 482 U.S. at 12, 107 S.Ct. at 2217-18.  The program

provided for severance benefits if the employee was terminated and neither the

employer, nor the new owner of the business, offered "substantially equivalent"

employment.  Id. at 1321.  In that situation, the employer "was obligated to apply

enough ongoing, particularized, administrative, discretionary analysis to make the

program. . . a 'plan.'"  Id. at 1323.  See also Belanger v. Wojman-Garden Co., 71 F.3d

451, 455 (155 Cir. 1995) (looking at whether a reasonable employee would perceive an

ongoing commitment by the employer to provide employee benefits).

See also Darlin v. Consolidated Rail Corporation, 93 F.Supp.2d 599, 601 (E.D. Pa.

2000) ("Here much akin to Pane, plan eligibility is restricted to employees who 'are

terminated (or constructively terminated) without cause'—a standard involving the use

of subjective discretion by the plan administrator.  So viewed, Conrail's special benefit

plan is an "employee welfare benefit plan" under ERISA. 29 U.S.C. §1002(1)").  In

Darlin, citing Pane, the court alluded to the "low level of discretion" necessary to

constitute the predicate for ERISA classification.  Id, at 602.

In Williams v. Wright, 927 F.2d 1540 (11th Cir.1991) wherein the company presented to the plaintiff general manager a letter from the company president promising retirement benefits, including a monthly payment of $500, the court held that the letter constituted an ERISA pension plan and as such was vested, despite the fact that it only covered one individual employee; examining the Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982) analysis, the court found that despite the lack of funding, there were simplified procedures for receiving benefits, and even an individual can constitute a class of beneficiaries. See also Roddy v. NAC Re Corp., 2000 WL 1336477 (D.Conn. 2000) (individual letter agreement was an ERISA plan).

ERISA also has been found to apply to an employer's voluntary separation plan where it entailed a series of employee meetings to disclose the terms of the offer and an ongoing administrative program to determine eligibility for plan benefits and to supplemental severance pay policy that provided a single-sum payment for "certain designated employees' equal in amount to the benefits payable under a basic severance pay plan, since the employer retained the discretion to determine eligibility for the extra benefits. Balock v. Mars Electronics Intern., Inc., 1990 WL 511 (E.D. Pa. 1990); Kocman and DiTondo v. Safeguard Business Systems, 189 WL 71492 (E.D. Pa. 1989). The Sixth Circuit has also held that severance pay arrangement that allowed some released employees—determined at the employer's discretion - -to choose between a lump-sum payment and a two-year period of salary continuation, in amounts that likewise could vary upward from a formulary amount in the employer's discretion; the arrangement was an ERISA plan because it entailed a degree of discretion, periodic demands on assets, and an administrative burden that ERISA's definition [of a welfare

benefit plan] contemplates. <u>Cassidy v. Akzo Nobel Salt, Inc.</u>, 29 EBC 1097 (6th Cir. 2002).

In <u>Blair v. Young Phillips Corp.</u>, 158 F. Supp. 2d 654 (M.D. N.C. 2001), the court held that a two-year employment agreement entered into between a company and its executive, which included severance compensation in the event of termination without cause and a noncompete clause extending up to two years, was an employee benefit plan under the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C.A. §§ 1001 et seq.) because the agreement granted significant discretion to the employer and required ongoing administration. The executive had served in the positions of president, chief operating officer, and vice chairman of the board of directors. Following the acquisition of the employer, the acquiring company terminated the employment of the executive, citing cause, and refused to provide the executive with severance benefits under the agreement. Seeking to recover the benefits, the executive brought state-law claims against both the acquired and acquiring companies ("the employer"). The employer removed the action, claiming preemption by ERISA, and the executive moved to remand. The court denied the executive's motion to remand. The agreement entitled the employer to terminate the executive for cause, which extinguished any right to severance compensation. A detailed definition of the term "for cause" was contained in the agreement. If the employer terminated the agreement without cause, the executive was entitled to severance compensation of 60% of his salary together with other fringe benefits for up to a two-year period. Violation of the noncompete clause required the executive to repay the employer for any profits that he received. The parties disputed whether the agreement constituted an employee benefit plan under

ERISA. In its analysis, the court referred to the test established by the Supreme Court for determining whether an employee benefit plan exists under ERISA. Under this test an employee benefit plan exists if the employer's arrangement requires an ongoing administrative program, the court said. In assessing whether such an ongoing administrative program exists, the court mentioned the following factors that were often considered by courts: the amount of discretion that was granted to the employer under the severance agreement; whether benefits were provided a one-time or continuing basis; and whether continuing payments required that a new administrative scheme be created. In finding that the agreement granted significant discretion to the employer, the court pointed to two employer responsibilities: the employer's authority to make a "for cause" determination as to eligibility for severance benefits; and the employer's determination of compliance with the noncompete provision. In concluding that the agreement required ongoing administration, the court reasoned that the non-compete covenant could necessitate a new administrative program to monitor the executive's professional activities for two years after the termination of his employment. See also Welch v. Maritrans, Inc., 2001 WL 73112 (E.D. Pa. 2001) and American Medical Intern v. Valliant, 74 F.3d 1245 (9th Cir. 1996).

Terhune's Severance Agreement has several characteristics that dictate ERISA implication that are similar, if not identical to the cases upholding application of ERISA to a severance agreement, including Pane and Schonholz and therefore must also be considered a "plan" pursuant to ERISA.

As in Schonholz, the arithmetical calculations required under Terhune's Severance Agreement are complex calculations. Pursuant to Section 4(e) of the

19

Agreement, Terhune should receive payment equal to eighteen months of base pay and the average bonus that he would have received if he had remained employed by AET. In order to determine Terhune's base salary for the applicable eighteen month period, AET was required to enter into complex calculations pursuant to the definition of base salary defined in Terhune's Employment Agreement.  According to the Agreement, Terhune's annual base salary was $430,000; "provided, however, that effective January 1, 2006, ... the Base Salary then in effect shall be increased by the greater of (1) such increase as the Board may specify in its sole discretion or (ii) an amount equal to the then current Salary multiplied by the percentage increase (if any) in the Consumer Price Index for All Urban Consumers (CPI-U)-U.S. City Average during the immediately preceding calendar year. Furthermore, according to the Agreement, Terhune's bonus was targeted at fifty percent (50%) of his base salary, with a maximum payout of one hundred percent (100%) of his base salary. Terhune was terminated on February 7, 2006. Therefore in order to calculate his benefits, AET had to compute his base salary based on the criteria mentioned above and then calculate his bonus based on his calculated salary.

Also similar to the Severance Plan in Schonholz, the distribution of Terhune's Severance benefits pursuant to the Agreement required managerial discretion and analysis in light of certain criteria.  Like the employer in Schonholz and Pane, AET was required to evaluate whether Terhune was terminated without cause in order to determine whether he was eligible for Severance Benefits. A significant amount of managerial discretion was required in order to determine Terhune's base salary and bonus. As noted above, the base salary after January, 2006 would be the greater of the

Consumer Price Index or a salary determined in the sole discretion of the Board. Furthermore, the bonus was also discretionary, ranging anywhere from a target of fifty percent (50%) to one hundred percent (100%) of the calculated base salary.

In addition, pursuant to Terhune's Agreement, the mandated allocation of benefits under the equity based incentive plan also requires managerial discretion. This promised plan was to be established by the Board for senior management. The Board had complete discretion to determine the terms of this plan. Furthermore, the Board would also determine what equity based incentive should apply to each senior manager level employee based upon their level in the company. Clearly, this discretionary plan has characteristics similar to the plan in Schonholz and therefore should be considered a plan under ERISA.

Furthermore, like the plan in Schonholz, Terhune's plan evidenced an ongoing commitment to provide severance benefits. In addition to the payment of salary and average benefits, Terhune's Severance Plan provides for his continued participation in the AET's benefit plans that require discretionary administration over an 18 month period as described in the Employment Agreement. Furthermore, Terhune is entitled to exercise vested stock options until the earlier of either the Benefits Termination date or the date the options would expire according to the terms of the grant. Either of these dates may occur after Terhune's termination date and therefore constitute an ongoing commitment by AET to provide administration relating to continued benefit entitlement.

As set forth above, in Pane v. RCA, Corp.supra, the Third Circuit affirmed the district court's decision and held that severance agreements created by the employer to retain a group of executives during a merger constituted an employee benefit plan

within the meaning of ERISA. Pane v. RCA, Corp., 868 F.2d at 635. In making this determination the district court pointed to the fact that under the severance agreement the employee was only entitled to benefits if he was terminated for reasons other than cause. Therefore, "the circumstances of each employee's termination [had to] be analyzed in light of [certain] criteria, and an ongoing administrative system constituting an ERISA plan existed." Pane v. RCA, Corp., 667 F. Supp. 168, 171 (D.N.J. 1987).

Similarly, pursuant to Terhune's Severance Agreement, AET was required to analyze the circumstances of Terhune's termination in order to determine if he was eligible for benefits. Specifically, AET must determine whether Terhune was terminated for reasons other than cause and thus is eligible for Severance Benefits. This required analysis clearly clearly implicates the analysis necessary to the establishment of a "plan" under ERISA.

### 2.  The Motion to Dismiss Should Be Denied to Counts II-V of the Complaint that Set Firth Claims Under Delaware Stutory and Common Law

As suggested above, the claims of Plaintiff, David Terhune brought pursuant to the provisions of ERISA and those cogently set forth under the dictates of Delaware statutory and common law are independently established in Counts I-V of his Complaint as alternative theories of recovery. Upon the appropriate determination that ERISA is applicable to the present matter, Defendant's Motion to Dismiss Plaintiff's claims for breach of contract, breach of the implied covenant of good faith and fair dealing and violation of the Delaware Payment and Collection law should be granted as falling under the mandates of ERISA's preclusionary mandates.

On the other hand, if ERISA does not apply, it is respectfully suggested that the Court cannot at this stage of the proceeding resolve the cogency of Plaintiff's well-stated claims under Delaware law. More specifically, it is respectfully suggested in accordance with the principals set forth above, that all of Defendant's arguments relating to the dismissal of Plaintiff's state law based claims rely on information and documents extraneous to the Complaint that cannot be considered by the Court without permitting further discovery on these issues. Even if the Court were to consider the extraneous documents attached to Defendants' Memorandum as Exhibits "1" and "2," it is evident from even a cursory reading that the Defendants' further proffer that Plaintiff has failed to comply with the terms of his employment agreement because he refused to sign the release Defendants drafted cannot control the issue of dismissal since the offered release contains apparent terms that are contrary to the Employment Agreement. Contrary to the terms of the Employment Agreement, the release states that Terhune shall receive severance payments in four installments, requires Plaintiff to continue as a Board Member, makes the benefits and EDCRP payments due to Plaintiff conditional upon extraneous events and circumstances, restates alleged restrictive covenants and requires their novation, requires release of entities and individuals other than AET, and requires Plaintiff's continued consultation services after termination. As a result of these different terms and conditions, Plaintiff refused to sign the release offered by Defendants. While the well plead facts of Plaintiff's Complaint are sufficient to overcome the applicable standard required for a motion to dismiss, the Court should not make any determination regarding these claims at this time and should either retain jurisdiction over Plaintiff's supplemental state law based claims (as permitted under the

provisions of 28 U.S.C. 1367(c)(3) and permit discovery thereon, <u>or</u> defer resolution to the Delaware state courts by dismissing these claims without prejudice.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Terhune respectfully requests that AET's Motion to Dismiss Count I be denied and upon the finding that ERISA applies, dismiss the claims set forth in Counts II through V of Plaintiff's Complaint based on the preclusive nature of ERISA's coverage, thereby permitting the matter to proceed before this Court on the basis of Counts I and VI.

Alternately, if the Court finds that ERISA coverage is not implicated, it is respectfully requested that the Court retain jurisdiction and permit Plaintiff's state law based claims set forth in Counts II through VI of the Complaint proceed to discovery <u>or</u> dismiss the state law based claims without prejudice so as to permit Plaintiff a full resolution of those claims before the Delaware courts.

Respectfully submitted,

James Green, Esquire (DE Bar No. 481)
Seitz, VanOgtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
Wilmington, DE 19899

And

Alan B. Epstein, Esquire
[Admitted *Pro Hace Vice*]
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, Seventh Floor
Philadelphia, PA 19103


Attorneys for Plaintiff
David N. Terhune

Dated: August 3, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of August, 2006, a true and correct copy of Plaintiff's Opposition to Defendants' Motion To Dismiss was served via electronic service and first-class mail, postage prepaid on the following:

> Wendy K. Voss, Esquire
> David E. Moore, Esquire
> Potter Anderson & Corroon, L.L.P.
> 1313 North Market Street
> P.O. Box 951
> Wilmington, Delaware 19899-0951

> Counsel for Defendants

James S. Green, Esquire

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **DAVID N. TERHUNE** | : | |
| **Plaintiff** | : | **Civil Action** |
| | : | |
| **v.** | : | |
| | : | |
| **APPLIED EXTRUSION** | : | **No. 06-360-KAJ** |
| **TECHNOLOGIES, INC.** | : | |
| | : | |
| **and** | : | |
| | : | |
| **JACKSON CRAIG** | : | |
| | : | |
| **and** | : | |
| | : | |
| **TERRY SMITH** | : | |

## <u>ORDER</u>

This matter having come before the Court upon Defendants' Motion to Dismiss

Counts I, II, III, IV, VI and VI of Plaintiff's Complaint, and the Court having considered

the Motion and Plaintiff's opposition thereto, it is, on this _____, day of

_____, 2006, hereby

ORDERED and DECREED that Plaintiff's Motion to Dismiss Counts I and VI of

Plaintiff's Complaint is DENIED.  The motion is GRANTED as to the Plaintiff's claims set

forth in Counts II through V based on the preclusive effect of the provisions of ERISA .

BY THE COURT:

_____

282910-1