IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DAVID N. TERHUNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APPLIED EXTRUSION | ) | C.A. No. 06-360-KAJ |
| TECHNOLOGIES, INC., JACKSON | ) | |
| CRAIG and TERRY SMITH, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS APPLIED EXTRUSION TECHNOLOGIES, INC.,
JACKSON CRAIG AND TERRY SMITH'S REPLY BRIEF
IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

OF COUNSEL:

Anthony D. Rizzotti
Christopher J. Powell
ROPES & GRAY LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000

Dated: August 10, 2006
745566 / 22036-002

Wendy K. Voss (#3142)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, Sixth Floor
1313 North Market Street
P. O. Box 951
Wilmington, Delaware 19899-0951
(302) 984-6000
wvoss@potteranderson.com
dmoore@potteranderson.com

Attorneys for Defendants
Applied Extrusion Technologies, Inc.,
Jackson Craig and Terry Smith

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

ARGUMENT .......................................................................................................................1

    I.    The Court May Properly Consider The Documents Attached
           To Defendant's Opening Memorandum. ..............................................................1

    II.   Plaintiff's Argument That The Severance Provisions Of The
           Agreement Constitute An ERISA Plan Is Unpersuasive. ...................................3

           A.    The calculations mandated under the Agreement require
                  only simple arithmetic ..........................................................................3

           B.    The Agreement's conditioning of severance payments on
                  termination without cause does not, as plaintiff claims,
                  itself give rise to an ERISA plan under Third Circuit law ...................5

CONCLUSION ..................................................................................................................7

# TABLE OF AUTHORITIES

## CASES

*Delaye v. Agripac, Inc.*,
    39 F.3d 235 (9th Cir. 1994) ............................................................................................ 3

*Pane v. RCA Corp.*,
    868 F.2d 631 (3d Cir. 1989) ....................................................................................... 5, 6

*Pane v. RCA Corp.*,
    667 F. Supp. 168 (D.N.J. 1987) .................................................................................. 5, 6

*Schonholz v. Long Island Jewish Medical Center*,
    87 F.3d 72 (2d Cir. 1996) ............................................................................................. 4

*Steinhardt Group, Inc. v. Citicorp*,
    126 F.3d 144 (3d Cir. 1997) ...................................................................................... 1, 2

## RULES

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 1

## INTRODUCTION

Defendants Applied Extrusion Technologies, Inc. ("AET"), Jackson Craig and Terry Smith (collectively, "Defendants") have moved to dismiss Plaintiff David N. Terhune's ("Terhune" or "Plaintiff") Complaint alleging various causes of action arising out of the termination of Terhune's employment, including claims for benefits under the Employment Agreement between Terhune and AET (the "Agreement").

Following Defendants' submission of their Opening Brief In Support of Their Motion To Dismiss The Complaint (the "Opening Brief") (D.I. 12), Terhune submitted his Memorandum in Opposition (the "Opposition") (D.I. 17). Defendants now respond, briefly, to three of the arguments made in the Opposition.

## ARGUMENT

### I. The Court May Properly Consider The Documents Attached To Defendant's Opening Memorandum.

Plaintiff's argument that the Court should ignore Defendants' two exhibits is unpersuasive because, pursuant to Fed. R. Civ. P. 12(b)(6), a Court may consider a document offered by a defendant that is indisputably authentic and upon which the plaintiff's claim relies. *Steinhardt Group, Inc. v. Citicorp*, 126 F.3d 144, 145, 153-155 (3d Cir. 1997). Defendants' two exhibits are indisputably authentic, were relied upon by Plaintiff in the Complaint, and demonstrate conclusively that he has failed to state a claim for severance payments under the Agreement, whether under ERISA or contract law.[1]

---

[1] Plaintiff does not attempt to contest the authenticity of the two documents offered by Defendants as Exhibits to their Opening Brief. Indeed, he could not reasonably do so. Exhibit One is a letter from Plaintiff's own counsel in which Plaintiff proffered an unexecuted form of general release. (Opening Brief, Exhibit 1.). Exhibit Two is an e-mail from Defendants' counsel rejecting the proffered form of release, and offering to pay the Plaintiff's claimed severance in exchange for execution of an attached release. (Opening Brief, Exhibit 2.).

Plaintiff explicitly referenced Exhibit One in Paragraph 19 of his Complaint which contains the key allegation:

> Despite Plaintiff's complete compliance with the terms of the Employment Agreement, <u>including the proffer of an appropriate release of AET</u>, no payments in accordance with the terms of the controlling Employment Agreement have been made to date.

(Complaint, ¶ 19) (emphasis added). For the reasons explained in the Opening Brief, Plaintiff's claim that he is due severance benefits under the Agreement, whether pursuant to ERISA or to contract law, depends on his assertion that he has satisfied his obligations under the Agreement. Exhibit One proves that Plaintiff has not satisfied such obligations, because he proffered an unexecuted form of release and that form was not acceptable to the Company.

Likewise, his claim that the Company has breached its obligations relies on the implication in Paragraph 19 that the Company has refused to pay without reason, which is belied by Exhibit Two. The law plainly allows Defendants to bring to the Court's attention authentic documents that show that Plaintiff's claims are not true. *See Steinhardt Group, Inc.*, 126 F.3d at 145, 153-155 (affirming dismissal of complaint in which claims depended on plaintiff's being a "passive investor" but letter agreement submitted by defendants demonstrated it was not). Defendant AET provided Plaintiff with a form of general release that it found acceptable, and was ready to make payment upon Plaintiff's execution of that release. Plaintiff never executed AET's release, nor did he suggest any changes. Instead, he filed a premature lawsuit that should be dismissed.

## II. Plaintiff's Argument That The Severance Provisions Of The Agreement Constitute An ERISA Plan Is Unpersuasive.

In his Opposition, Plaintiff fails to address Defendants' primary argument, that the Ninth Circuit's decision in *Delaye v. Agripac, Inc.*, 39 F.3d 235 (9th Cir. 1994), supplies the correct rule of decision here; namely that a promise like the one here, to pay a single executive easily calculable severance benefits over a period of time if and only if he is terminated without cause, does not require the employer to create an "ongoing administrative scheme" and thus does not give rise to an ERISA plan.

Instead, Plaintiff recites dozens of cases standing for a wide variety of propositions relating to the existence of such an ongoing administrative scheme, most of which appear to have nothing to do with this case. Ultimately, however, Plaintiff makes two arguments as to why the severance provisions of the Agreement constitute an ERISA plan. Neither of these arguments is persuasive.

### A. The calculations mandated under the Agreement require only simple arithmetic.

Plaintiff's first argument, that the calculations necessary to determine his benefits under Section 4 of the Agreement were complex, is simply not true. In fact, Plaintiff's description of the calculations involved is inaccurate. It is true that the Agreement required the Company to calculate the value of a lump-sum payment equal to the sum of his base salary and the average bonus he would have received over the eighteen-month period following termination. (Complaint, Exhibit A § 4(e)). It is not true, however, that calculating his base salary would involve "complex calculations pursuant to the definition of base salary defined in Terhune's Employment Agreement" relating to cost of living adjustments or discretionary increases that might have occurred over the eighteen month period. (Opposition at 20). To the contrary, the Agreement explicitly states that when

-3-

calculating the severance obligation, the Company was to "exclud[e] any cost of living or discretionary increases that would have occurred after the Termination Date." (Complaint, Exhibit A, § 4(e)(ii).)

The truth is that the calculations required under the Agreement involved simple arithmetic. First, the Agreement required the Company to multiply Terhune's final monthly salary by eighteen. Then, pursuant to the definition of "Average Bonus", it required the Company to add to that result the greater of (a) the average of the annual bonuses he had received over the three years prior to termination or (b) twenty-five percent of his annual base salary for the year of termination. (Complaint, Exhibit A, §§ 4(a) and 4(e)(ii).). Such calculations, particularly for a single executive on one occasion, do not require AET to establish an ongoing administrative scheme.

Finally, the case on which Plaintiff relies bears little factual resemblance to the argument he makes. In *Schonholz v. Long Island Jewish Medical Center*, the severance plan at issue purported to cover all "senior-level employees" of the defendant hospital. 87 F.3d 72, 74 (2d Cir. 1996). The hospital's plan provided for a set of subjective criteria to determine payment:

> Payments under the Severance Plan were to be based upon both the length of time the employee held his position and his prospects for reemployment, but they would be made only if the plaintiff displayed a reasonable and good faith effort to obtain a position commensurate with his former level of responsibility.

*Id.* Thus, not only did the hospital's plan involve multiple employees, but it also used the difficult-to-quantify criterion "prospects for reemployment" to determine the value of any payment, and subjective notions of "reasonable and good faith effort" and "position commensurate with his former responsibility" to determine eligibility. This sheds little or

no light on the case at bar, where once it was determined that Terhune was terminated without cause, the Company had only to apply a fixed mathematical formula to determine what he is due once he executes a general release in a form acceptable to the Company.

> B. **The Agreement's conditioning of severance payments on termination without cause does not, as plaintiff claims, itself give rise to an ERISA plan under Third Circuit law.**

Simply stated, Plaintiff has mischaracterized the import of *Pane v. RCA Corp.*, 868 F.2d 631, 635 (3d Cir. 1989). That case does not stand for the proposition Plaintiff wishes it to stand for; namely, that merely conditioning payment of severance on the circumstances of termination converts an individual agreement for severance benefits into an ERISA plan. Rather, the opinions of both the District Court and the Third Circuit make clear that their decisions were grounded in the fact that the severance agreement at issue was one of many, and part of a comprehensive program to provide severance to a number of corporate executives that required on-going administration. This is plain in the District Court's own statement of its holding:

> [T]here is no doubt that, whatever the specific provisions of the defendant's severance program, they surely involve a separate determination of each employee's eligibility for benefits. This is not a situation, like that in Fort Halifax, where the company was obligated to make a single set of payments to all employees, and thus did not need an ongoing administrative system. Defendants did maintain a program to provide employees with "benefits in the event of...unemployment," 29 U.S.C. § 1002(1), and thus had an ERISA plan.

667 F.Supp. 168, 171 (D.N.J. 1987). In so holding, the District Court made specific counter-reference to the Supreme Court's holding in *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211 (1987), and the facts applicable in that case, i.e. a "lump-sum payment triggered by a single event [which] requires no administrative scheme

whatsoever" to which ERISA did not apply. *Id.* at 170 (quoting *Fort Halifax*, 107 S.Ct. at 2218). In short, the District Court specifically distinguished its holding from the rule applicable to an individual severance agreement such as the one at issue here.

The Third Circuit's opinion on appeal underscores the point. In it, the Court of Appeals describes at length the actions of the employer's Board of Directors in creating a program to provide selected executives with severance agreements and authorizing management to negotiate individual variations to a standard severance agreement. 868 F.2d 631, 633-635. The Court of Appeals <u>never</u> mentions as a factor in its analysis that payment is conditioned on termination without cause. *Id.* Thus, as Defendants stated in their Opening Brief, what made the agreement at issue in *Pane* subject to ERISA was that it was part of a program that required an ongoing administrative scheme to make repeated determinations of eligibility in regard to a group of employees. That circumstance is not before this Court in this matter.

## CONCLUSION

For all the foregoing reasons, and the reasons stated in their Opening Brief, Defendants AET, Inc., Jackson Craig and Terry Smith respectfully request that the Court (a) dismiss Count I of the Complaint for failure to state a claim, (b) dismiss Counts II, III and IV for failure to state a claim or in the alternative for lack of subject matter jurisdiction, and (c) dismiss Counts V and VI for lack of subject matter jurisdiction.

POTTER ANDERSON & CORROON LLP

By: /s/ David E. Moore

OF COUNSEL:

Anthony D. Rizzotti
Christopher J. Powell
ROPES & GRAY LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000

Dated: August 10, 2006
745566 / 22036-002

Wendy K. Voss (#3142)
David E. Moore (#3983)
Hercules Plaza, Sixth Floor
1313 North Market Street
P. O. Box 951
Wilmington, Delaware 19899-0951
(302) 984-6000
wvoss@potteranderson.com
dmoore@potteranderson.com

Attorneys for Defendants
Applied Extrusion Technologies, Inc.,
Jackson Craig and Terry Smith

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on August 10, 2006, the foregoing document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF, which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

James S. Green, Esq.
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, Delaware 19899

/s/ David E. Moore
Wendy K. Voss (#2874)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000 - Telephone
(302) 658-1192 - Facsimile
wvoss@potteranderson.com
dmoore@potteranderson.com

739635